

## Missouri Court of Appeals
### Southern District
### Division Two

CEDAR PARK DEVELOPMENT, LLC, and )
LORIE A. LOUGH, )
         )
      Appellants, )
         )
   vs. )  No. SD36388
         )
DONNA J. POWERS and BRIAN J. POWERS, )  FILED: September 11, 2020
         )
      Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Judge

**APPEAL DISMISSED**

Lorie A. Lough ("Lough") and Donna J. and Bryan J. Powers ("the Powers") were members of Cedar Park Development, LLC ("CPD"), a Missouri limited liability company. Disputes arose regarding CPD's initial organization and subsequent operations leading Lough to initiate this action asserting claims against the Powers and the Powers asserting counterclaims against Lough along with requesting and receiving an order appointing a receiver for CPD. During the second day of trial, the parties settled all of their claims ("the settlement agreement"). The settlement agreement included, in pertinent part, the sale of CPD's assets, including a 40-unit apartment complex ("the real estate"), by the court-appointed receiver, Debco Management, Inc. ("the Receiver").

1

Lough now appeals the trial court's judgment entered in accordance with the settlement agreement and which thereafter approved the Receiver's proposed sale of the real estate, approved and ordered the Receiver to distribute the sale proceeds, and then finally discharged the Receiver.[1] Because Lough voluntarily accepted a benefit of the judgment—her distributive share of the sale proceeds from the Receiver—and thereby abandoned her right to appeal the judgment, we dismiss her appeal.

### Factual and Procedural Background

During the second day of trial, on August 30, 2018, the parties announced to the trial court that they had reached a resolution for all claims and issues. The settlement agreement, which was spread on the record, included the following relevant terms: the real estate, which was owned by CPD, would be sold; the previously court-appointed Receiver would have the discretion to market the real estate and obtain the best purchase offer; purchase offers would be presented to the trial court for approval; the parties would execute mutual releases for all of the past dealings between the parties and their entities, without exceptions or reservations; and the instant case would be dismissed with prejudice. The trial court stated that it understood the settlement agreement to be a global settlement of all terms, issues, and claims. The parties affirmatively voiced on the record that they had no objection to the trial court's description.

The settlement agreement was memorialized by the trial court's entry on September 18, 2018, of its "**JUDGMENT AND ORDER OF DISSOLUTION OF [CPD] AND**

---

[1] On October 30, 2019, six months after the trial court entered its last judgment, which 30 days thereafter became final, Lough filed in this Court a Rule 81.07(a) motion for special order permitting a late filing of her notice of appeal. The next day, this Court issued its special order granting Lough's motion and allowing her ten days within which to file a notice of appeal in the trial court. In accordance with that order, Lough thereafter timely filed her notice of appeal.

All rule references are to Missouri Court Rules (2020), unless otherwise indicated. All statutory references are to RSMo 2016, unless otherwise indicated.

**INSTRUCTIONS TO RECEIVER (NOT A FINAL JUDGMENT)**" ("the Receiver's

instructions"). The Receiver's instructions stated, in pertinent part,

> The Receiver is authorized and directed to list the real estate and other assets for sale and to sign the listing as Receiver for [CPD]. When in the opinion of the Receiver, the Receiver has obtained an offer or offers to purchase the assets of [CPD], which is the best price obtainable under the circumstances, the Receiver may submit the terms of the offer to the court for approval, and await further orders from the court.

> The court retains supervisory power and authority over the dissolution of [CPD], the marketing of the property of [CPD] provided above, and the conclusion of the lawsuit, including the entry of final judgment consistent with the settlement announced by the parties on August 30, 2018 and spread upon the record.

The day before the trial court's entry of this order, Glenn A. Huggins, one of Lough's

attorneys,[2] electronically filed ("eFiled")[3] a letter with the trial court expressing Lough's

agreement that the form of this document, as previously proffered by the Powers' attorney,

"accurately reflects the terms of the settlement" and further stated that she had no objection to it

being approved and entered by the trial court.

On November 7, 2018, at 1:15 p.m., Starwood Realty, LLC, made a written offer to

purchase the real estate for $1,850,000 ("the Starwood offer") that was thereafter submitted to

---

[2] Attorney Christopher J. Stark entered his appearance for Lough in this case upon his filing of the initial petition on her behalf on December 8, 2016. Attorney Stark never sought nor was granted leave by the trial court to withdraw from representing Lough. The record reflects, nevertheless, that he took no further court action on Lough's behalf in this case after attorney Patrick R. Baird entered his appearance for Lough on December 18, 2017. Attorney Baird filed a motion to withdraw as Lough's attorney on July 27, 2018, but that motion was never ruled on by the trial court nor was he otherwise granted leave to withdraw by the trial court. The record reflects, nevertheless, that attorney Baird took no further court action on Lough's behalf in this case after attorneys Elizabeth L. Turner and Huggins entered their joint appearance on her behalf on July 31, 2018.

[3] Missouri's Legislature established the court automation committee in 1994. Section 476.055.2. The court automation committee is charged by the Legislature to "develop and implement a plan for a statewide court automation system." Section 476.055.3. Supreme Court Operating Rule ("SCOR") 27.01(a) provides that "The Missouri Court Automation Committee shall establish an electronic filing system." The SCOR 27.01(a) electronic filing system established by the court automation committee was developed and implemented as an integral part of the committee's section 476.055.3 plan for a statewide court automation system. Only a "Registered User" may be granted access to and file documents in the electronic filing system. SCOR 27.02(d). To access the electronic filing system, a registered user must "[e]lectronically furnish and maintain registration information[,]" SCOR 27.03(d)(2), and "[m]aintain an email address at which the registered user agrees to accept service through the electronic filing system and other notices[,]" SCOR 27.03(d)(3).

the Receiver. By its terms, the Starwood offer expired at 8:00 p.m. the next day, November 8, 2018.

A little over two hours later, at 3:29 p.m. on November 7, 2018, RBI Capital, LLC ("RBI") made a written offer to purchase the real estate for $1,980,000 ("the RBI offer") that was also thereafter submitted to the Receiver. By its terms, the RBI offer expired at 5:00 p.m. the next day, November 8, 2018.

At 4:55 p.m. on November 7, 2018, the Powers' attorney sent correspondence to Judge Brown's clerk by electronic mail ("email") that also included as attachments both the Starwood offer and RBI offer.[4] This correspondence stated that the Powers' counsel intended "on coming

---

[4] After Lough filed her initial brief, the Power's filed a motion to supplement the trial court's official record. The Powers alleged that "a letter dated November 7, 2018 and attachments . . . were requested to be filed under seal, but they do not appear in the [trial] court records[.]" Acting under the authority granted in Rule 81.15(b), this Court issued an order, dated May 14, 2020, referring the Powers' motion to supplement the record to the trial court and asked it to certify whether the referenced letter and attachments should be made part of the official trial court record. In response, the trial court entered an order, dated May 15, 2020, which stated as follows:

> PER COURT OF APPEALS' ORDER OF 5/14/20, THIS COURT NOW DIRECTS AND CERTIFIES THAT THE LETTER FROM MR. MCCURRY OF 11/7/18 AND THE ATTACHMENTS THERETO BE MADE A PART OF THE OFFICIAL TRIAL RECORD AND FILED FORTHWITH; BUT THE COURT DEEMS THEM FILED AS OF 11/7/18, AS SHOULD HAVE OCCURRED ABSENT ERROR OF THE ACTING DIVISION CLERK. JRB/dlb

The legal file in this appeal was then supplemented with the referenced letter, dated November 7, 2018, its attachments, and the email that was used to file with the trial court. The attachments to the email included the correspondence to the court, the Starwood offer and the RBI offer. Thereafter, Lough filed a motion in the trial court requesting reconsideration of its order of May 15, 2020. In response, the trial court issued the following ruling:

> AFTER FURTHER CONSIDERATION, THE COURT NOW AMENDS ITS ORDER OF 5/15/20, TO CLARIFY THAT THE SUBJECT LETTER AND ATTACHEMENTS [sic] OF 11/7/18 WERE EMAILED TO THIS COURT'S DIVISION CLERK DURING A TIME WHEN BOTH SHE AND JUDGE BROWN WERE OUT OF THE OFFICE. THE LETTER WAS ALSO SENT TO THE ACTING DIVISION CLERK, WHO NEGLECTED TO ACT ON IT OR FORWARD IT. THE LETTER AND ATTACHEMENTS [sic] SHOW MS. LOUGH'S THEN COUNSEL WERE COPIED THEREUPON. THE COURT FINDS THAT HAD IT BEEN MADE AWARE OF THE LETTER, IT WOULD HAVE DIRECTED THE ATTACHMENTS TO BE FILED AT A RAISED SECURITY LEVEL, AS WAS REQUESTED, AND AS HAD BEEN PREVIOUSLY GRANTED. PER THE DOCKET ENTRY OF 11/8/18, MR. MCCURRY APPEARED THAT DAY BEFORE JUDGE CORDONNIER, WHO ACTED ON THE MATTER. THEREAFTER, THIS COURT HEARD NO ISSUE OR OBJECTION WITH REGARD TO THE LETTER, THE ATTACHEMENTS [sic], OR, THAT APPEARANCE, UNTIL SHORTLY PRIOR TO MS. LOUGH'S SUBJECT MOTION TO RECONSIDER

to the court tomorrow morning to speak with Judge Brown regarding the attached offers" and that "this correspondence, along with attachments, should not be made public by filing it on Case.net. It should be sealed." The Powers' attorney simultaneously emailed a copy of this email and its attachments to two of Lough's then attorneys, Elizabeth L. Turner and Huggins.[5]

The next day, on November 8, 2018, Judge Cordonnier, acting due to the temporary unavailability of Judge Brown, made the following docket entry:

> Plaintiff fails to appear. Defendant appears by Atty McCurry. The Court is advised case has been settled. Atty McCurry advises the Court that the receiver, Debco Management, has a bonafide offer to purchase the property at issue and requires approval to schedule closing and sell the property. No party objects to proposed sale. Receiver is directed to close sale as soon as practical. Upon closing, and payment of priority expenses, Receiver is Ordered to deposit the net funds and make no further distribution without further order of the Court. Atty McCurry is directed to advise Receiver of terms of Court order. Judge Cordonnier acting. Div. 1/bss

When entered into the statewide court automation system[6] on that date, this docket entry automatically generated an electronic notice of its entry sent by email on that date ("eNotice") to each of Lough's attorneys.[7]

---

ORDER. SAID MOTION IS NOW RESPECTFULLY DENIED. THIS COURT MAKES NO FINDING OR DETERMINATION AS TO THE EFFECT OR IMPACT OF THE ITEMS DEEMED FILED UPON ANY PARTY'S SUBSTANTIVE POSITION ON APPEAL. JRB/dlb

[5] As required by Rule 55.03(a), attorneys Turner and Huggins disclosed each of their email addresses in their written joint entry of appearance and in each document they eFiled, as a registered user of the electronic filing system on Lough's behalf in the case thereafter. Nothing in the record discloses any email address for either attorney Turner or Huggins other than their respective email addresses as initially disclosed in their joint entry of appearance and which they maintained as registered users of the electronic filing system, *see* footnote 3. Conversely, nothing in the record indicates that any email sent by the Powers' attorney or notice sent by email by the court's electronic filing system ("eNotice") directed toward either attorney Turner or attorney Huggins was sent to any other email address than those as so disclosed and maintained by those attorneys.

[6] *See* footnote 2.

[7] As relevant to the issues discussed in this opinion, all required notices from the court are made by the electronic filing system automatically generating and sending an eNotice to registered users associated with the case. *See* Rule 103.09. Similarly, required service of an eFiled document is made by the electronic filing system automatically generating and sending an eNotice to registered users associated with the case. *See* Rule 103.08. The statewide court automation system maintains an "eNotice History" for every entry made in the docket on every case maintained in the system, which necessarily includes the docket entry for each eFiled document. This history includes the date and time the eNotice of that docket entry was transmitted and the name, bar number, and email address of each attorney to whom it was sent. The location from which these records are obtained from the system

On December 7, 2018, the Powers' attorney eFiled correspondence to the court, which, in pertinent part, provided appraisal information for the real estate and indicated that the closing date for its sale was tentatively scheduled for December 31, 2018. The correspondence indicated that a copy of it had been emailed by the Powers' attorney on December 5, 2018, directly to Lough's attorneys Turner and Huggins. The eFiling of this correspondence also generated an eNotice of its filing to each of Lough's attorneys on the date it was filed.

On December 19, 2018, the Powers' attorney eFiled a proposed "**<u>ORDER APPROVING SALE OF REAL ESTATE OF [CDP]</u>**" ("the proposed order approving sale"). The order approving sale identified, among other matters, RBI as the prospective purchaser, the proposed purchase price, and the proposed date of December 31, 2018, for the closing of the proposed sale. In pertinent part, the order approving sale provided as follows:

> On November 8, 2018, the court was apprised that the Receiver in above cause, Debco Management, Inc., had receive [sic] a bonafide offer to purchase the real estate at issue, and a request for approval of the sale and the scheduling of a real estate closing of the transaction. The court is informed that the real estate contract has been signed by [CPD] as Seller, and [RBI] as Buyer.
>
> ***
>
> The court is informed and believes that the purchase price to be paid by the Buyer, [RBI], is the sum of One Million Nine Hundred Eighty Thousand and no/100 Dollars ($1,980,000.00), which purchase price the court approves.
>
> The court is informed and believes that the closing of the above-described real estate transaction is scheduled at the office of Fidelity Title Agency of Springfield, Missouri on December 31, 2018. The court approves the closing of the transaction on that day, or such other day as the parties may agree.

---

is under the "eNotice History" icon in the upper right corner of each docket entry as currently available to court personnel on the "Docket Entries" tab when securely logged into Case.net.

Because attorneys Stark and Baird were never granted leave by the trial court to withdraw from their representation of Lough, *see* footnote 5, all eNotices mentioned in this opinion as having been sent to each of Lough's attorneys were individually sent to all of Lough's attorneys of record: Stark, Baird, Turner, and Huggins.

The eFiling of this order approving sale generated an eNotice of its filing to each of Lough's attorneys.

The next day, on December 20, 2018, during a hearing at which there was no appearance by Lough, the trial court approved, signed, and entered the order approving sale in the same form as proposed. The trial court's entry of this order along with the docket entry of the proceedings made by Judge Brown on that day generated an eNotice of those actions to each of Lough's attorneys on that date.

On January 29, 2019, the Powers' attorney eFiled the "**RECEIVER'S MOTION FOR ORDER OF DISTRIBUTION OF PROCEEDS OF SALE OF REAL ESTATE OF [CPD]**" ("the motion for proceeds distribution"). The motion stated, in pertinent part, that the real estate had been sold to RBI on December 31, 2018, for a purchase price of $1,980,000.00, and that the Receiver sought an order authorizing the distribution of proceeds in conformity with the settlement agreement, which included a proposed $3,000 distribution to Lough. The eFiling of this motion along with a notice of hearing for January 31, 2019, at 9:00 a.m., generated an eNotice of the filing of both documents to each of Lough's attorneys.

On the noticed hearing date, January 31, 2019, the trial court entered an order of distribution in accordance with the Receiver's proposed distribution in its motion for proceeds distribution. The trial court's entry of this order generated an eNotice of its entry to each of Lough's attorneys on the date it was entered.

On April 18, 2019, the Powers' attorney eFiled several documents and motions, including a "**FINAL REPORT OF RECEIVER DEBCO MANAGEMENT, INC.**" ("the Receiver's report") and a proposed "**FINAL JUDGMENT AND ORDER DISCHARGING RECEIVER; FINAL JUDGMENT AND ORDER OF DISSOLUTION OF [CPD]; AND FINAL**

**JUDGMENT AND ORDER OF DISMISSAL OF ALL PENDING CLAIMS OF**

**PLAINTIFFS AND DEFENDANTS**" ("the final judgment").  The Receiver reported to the

trial court that it had made all the payments as approved and authorized in the order of

distribution entered by the court on January 31, 2019, and that "[Lough] has received the sum of

$3,000.00 from Receiver[.]"[8]  A hearing to review the submitted material was scheduled before

the trial court for April 30, 2019.  The eFiling of these documents and the docket entry of the

trial court's scheduling of the hearing on April 30, 2019, generated an eNotice to each of

Lough's attorneys on the filing date.

Four days later, on April 22, 2019, Lough's attorney Turner eFiled an application seeking

leave of the trial court to withdraw as attorney for Lough at the close of the case.  This eFiling

generated an eNotice to each of Lough's other attorneys on that date.

Lough did not appear in person or by counsel at the scheduled hearing on April 30, 2019.

Following that hearing, the trial court approved and signed the final judgment in the form as

submitted and proposed by the Powers.  Under the final judgment, the trial court found and ruled

that the Receiver had "complied with all orders and directions of the court herein" and had "fully

disposed of and paid out the remaining funds and property in its hands under the Order of this

Court of January 31, 2019, leaving no other assets of CPD to administer," and that the Receiver

had "fully completed the administration of its trust."  The trial court further found in its judgment

that "all claims and controversies between [Lough] and [the Powers] [had] been forever set at

rest under the settlement announced by the parties and spread upon the record on August 30,

---

[8] The Receiver's supporting documentation for this payment included a copy of a monthly statement on a Central Bank of the Ozarks' checking account Receiver maintained on CPD's behalf showing a $3,000.00 disbursement therefrom on January 31, 2019, and a copy of a Central Bank of the Ozarks' Cashier's Check dated the same date in the same amount and payable to Lough.  Lough certified to this Court that she "received a cashier's check from the Central Bank of the Ozarks dated January 31, 2019, totaling in the amount of Three Thousand and No/100 Dollars ($3,000.00)" and that she "redeemed said cashier's check and received the $3,000.00 payment."

8

2018"; that the Receiver was discharged, having "fully completed the administration of its trust"; and that CPD was dissolved and that the parties' claims and counterclaims were dismissed with prejudice per the terms of the settlement agreement. By docket entry at the same time, the trial court granted attorney Turner leave to withdraw from her representation of Lough. The entry of the final judgment and associated docket entry generated an eNotice to each of Lough's other attorneys on that date. No post-judgment motions were filed by any party.

**Discussion**

More than eighty years ago, our Supreme Court held that

> The general rule is that a litigant who has voluntarily and with knowledge of all the material facts accepted the benefits of an order, decree or judgment of a court, cannot afterwards take or prosecute an appeal or error proceeding to reverse it. The reason for this rule is that a party cannot proceed to enforce and have the benefit of such portions of a judgment as are in his favor and appeal from those against it-in other words, that the right to proceed on a judgment and enjoy its fruits and the right to appeal therefrom are totally inconsistent positions, and the election to pursue one course must be deemed an abandonment of the other.

*Cent. States Life Ins. Co. v. Lewin*, 115 S.W.2d 801, 801–02 (1938) (internal quotation marks and citations omitted). Even then, this statement was considered "the well-settled rule in this jurisdiction." *Id.* at 802. And today, it remains so. *See e.g.*, *In re Marriage of Miller*, 347 S.W.3d 132, 139 (Mo.App. 2011); *Deweese v. Inv'rs Title Co., Inc.*, 792 S.W.2d 40, 42 (Mo.App. 1990).

Lough acknowledges this general rule, but asserts that it is not applicable in the particular circumstances of this case because when she accepted the Receiver's distribution, she did not have knowledge of all the material facts. While we agree that the relevant time to assess her knowledge is when she accepted the Receiver's distribution, on or shortly after January 31, 2019, we disagree with her assertion that she did not have knowledge of all material facts at that time.

9

The initial interlocutory trial court judgment addressing the substantive rights between the parties was the Receiver's instructions entered on September 18, 2018. This order was entered only after Lough acknowledged to the trial court that its form accurately memorialized and implemented the settlement agreement and that she acquiesced with its entry.

The order approving the sale of the real estate was entered by the trial court on December 20, 2018, only after Lough was given notice[9] of the two offers and the proposed sale by email from the Powers' attorney to her attorneys Turner and Huggins at 4:55 p.m. on November 7, 2018; eNotice of the trial court's November 8, 2018, docket entry considering the two offers and approving the RBI offer; notice by email on December 5, 2018, by Powers' attorney to her attorneys Turner and Huggins and by eNotice to each of her attorneys of the Powers' attorney's correspondence to the trial court on December 7, 2018, containing appraisal information for the real estate and indicating that the closing date for the proposed sale was tentatively scheduled for December 31, 2018; eNotice of the eFiling by the Powers' attorney of their proposed order approving sale on December 19, 2018; and eNotice on December 20, 2018, of the trial court's entry of the order approving the sale of the real estate on that date. Yet, with the knowledge imparted to her through these notices as to all the intermediate actions leading toward the entry of the order approving sale, her knowledge of the entry of the order approving sale, and her knowledge that the sale was not set to close until eleven days later on December 31, 2018, Lough filed no objection with the trial court nor took any other action before the sale closed to alert the

_____

[9] "'[W]here a client employs a lawyer to represent the client in a particular matter, knowledge of the lawyer about the matter, acquired in the course of the lawyer's employment, is generally imputed to the client.'" *Hall-Bouldin v. Bouldin*, 497 S.W.3d 385, 389 (Mo.App. 2016) (quoting *Kline v. Bd. of Parks & Recreation Comm'rs.*, 73 S.W.3d 63, 67 (Mo.App. 2002)); *Fitzgerald v. State ex rel. Adamson*, 987 S.W.2d 534, 536 (Mo.App. 1999) (citing *Bayne v. Jenkins*, 593 S.W.2d 519, 533 (Mo. banc 1980)). Lough makes no claim that this general rule is inapplicable or does not operate to impute knowledge to her of all notices mentioned in this opinion that were sent to her then attorneys of record. We sometimes refer to those notices as having been given to Lough because, as a consequence of her imputed knowledge from her attorneys, those notices legally were given to her.

10

trial court, the Receiver, or the Powers that she lacked any relevant knowledge of, took any issue with, or had any problem, reservation or objection to the proposed sale or any procedure used to seek approval of the proposed sale.

In arguing that she did not have knowledge of the material facts on January 31, 2019, when she accepted the Receiver's distribution, Lough exclusively hones in on the November 7, 2018, 4:55 p.m. email from the Powers' counsel to Judge Brown's clerk with the two offers. Ignoring and omitting any mention that the record demonstrates that a copy of this email and the offers were simultaneously emailed to Lough's attorneys Turner and Huggins, Lough asserts, without any supporting citations to the record, that

> The [Powers'] attorney avoided a Case.Net filing in violation of Rule 103.05(a) and thereby orchestrated the presentation of the offers to the court in such a manner that [Lough] was not given notice of the offers or notice of when they would be considered by the court. They were rushed through the court system for approval with an alternate Judge and without a hearing. The offers were never filed with Case.Net and were kept secret from [Lough] until this appeal.

Based upon this premise, Lough concludes that "[t]his deprived [her] of the ability to consider, object to, or challenge, the sale process" and "of the opportunity to submit her own offer to purchase the Cedar Park assets and potentially outbid the existing offers." We disagree because both Lough's premise and her conclusions are incorrect.

Lough's premise incorrectly assumes that the state of her knowledge when she accepted the Receiver's distribution on or shortly after January 31, 2019, is dependent upon whether information about the offers should have been posted on Case.net on November 7, 2018. That assumption is incorrect. Knowledge acquired by Lough's attorney about her case, regardless of whether acquired by email correspondence from opposing counsel or an eNotice from the statewide court automation system, is imputed to Lough. *See **Hall-Bouldin***, 497 S.W.3d at 389; footnote 9 *supra*. The relevant fact here, therefore, is whether Lough's attorneys were given

11

notice of the offers on November 7, not the manner in which such notice was given.  The record

supports this notice was given by the direct email from the Powers' attorney to Lough's

attorneys Turner and Huggins.  Lough does not challenge that this email was sent to her

attorneys.  This email notice included the attorney's correspondence to the trial court's clerk and

complete copies of both written offers, each having nine of nine pages.  Nothing in the record

supports that either offer had any terms or conditions that were not included in these attached

written offers.  Both offers had extremely quick expiration times (5:00 p.m. and 8:00 p.m. the

next day) that were expressly conditioned upon time being of the essence.  Sending a copy of this

email and attachments to Lough's attorneys Turner and Huggins at the exact same time the

Powers' attorney sent it to Judge Brown's clerk completely refutes Lough's unfounded and

unmoored-to-the-record assertion that the offers were "kept secret from [Lough]."  Whether that

email and its attachments were otherwise required to be eFiled with the court, a question we need

not and do not reach, does not diminish or have any impact upon the fact that the email to her

attorneys Turner and Huggins gave actual notice of the offers to Lough.

In addition to her incorrect premise, Lough's conclusions are also incorrect.  Nothing in

the record supports that Lough was restricted in any manner from submitting "her own offer to

purchase" the real estate at any time after the settlement agreement was spread on the record by

the parties on August 30, 2018.  Next, assuming for the sake of argument that the November 7

email from the Powers' attorney to Lough's attorneys Turner and Huggins did not provide actual

notice of the offers, each of Lough's attorneys, nevertheless, was given eNotice the next day of

Judge Cordonnier's docket entry mentioning and considering the proposed sale to RBI.  Lough

therefore had at least from November 8 until the trial court's entry of its formal order approving

the sale on December 20 "to consider, object to, or challenge, the sale process" or to "potentially

12

outbid the existing offers." During that more than 40-day period, which included additional eNotices and an email notice all advising of the several additional steps taken in moving forward with a sale of the real estate, Lough took no action. Nothing in the record supports that Lough was restricted in any manner during this period in considering, objecting to, or challenging the sale process or from attempting to outbid the existing offers. Lough's argument that she did not have knowledge of the material facts has no merit.

After the sale closed on December 31, 2018, Lough was given eNotice when the Powers' attorney eFiled the Receiver's motion for proceeds distribution on January 29, 2019, and of the hearing on that motion scheduled for January 31, 2019. Lough also was given eNotice on January 31, 2019, of the trial court's entry of its order of distribution that included a $3,000.00 distribution from those proceeds to her. Lough neither filed in the trial court or otherwise voiced any objection to either the Receiver's motion for proceeds distribution or the trial court's order of distribution. Rather, Lough received and accepted the $3,000.00 distribution from the proceeds of the sale of the real estate made by the Receiver to her as approved and ordered by the trial court in its order of distribution.

The trial court's entry of the Receiver's instructions on September 18, 2018, occurred not only with Lough's knowledge, but at her behest with her expressed acknowledgment, acquiescence, and consent. All of the many notices given to Lough of each intermediate action that occurred thereafter and before the trial court's entry of the order of distribution on January 31, 2019, provided Lough with knowledge of the material facts related to those actions before she voluntarily accepted a distribution from the real estate sale proceeds, as provided in the trial court's January 31, 2019, order of distribution. Lough's acceptance of this distribution from the real estate sale proceeds under the trial court's judgment is inconsistent with any claim that the

13

judgment, which generated those real estate sale proceeds in the first instance, was erroneously made by the trial court. By accepting this distribution under the trial court's judgment, Lough abandoned any right she may have had to appeal that judgment. *See **Lewin***, 115 S.W.2d at 801–02. Accordingly, Lough's appeal should be dismissed.

<u>**Decision**</u>

Lough's appeal is dismissed.[10]

GARY W. LYNCH, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

[10] The Powers' motion to dismiss taken with the case is denied as moot. The Powers' also filed a motion seeking damages under Rules 84.19 and 55.03 for frivolous appeal that was also taken with the case. Any award of Rule 84.19 damages or Rule 55.03 sanctions is discretionary. Rule 84.19; Rule 55.03(d). Exhibiting enormous restraint in our exercise of that discretion, "lest we chill others from filing meritorious appeals[,]" ***Johnson v. Aldi, Inc.***, 971 S.W.2d 911, 913 (Mo.App. 1998), we deny the Powers' motion for damages for frivolous appeal.